Jason K. Henderson
jason@taylorlawoffices.com
Idaho Bar No. 8872
Andrew Jenkins
andrew@taylorlawoffices.com
Idaho Bar No. 10915
Miles L. Russon
miles@taylorlawoffices.com
Idaho Bar No. 12535
**TAYLOR LAW OFFICES, PLLC**
1112 W Main St #101
Boise, ID 83702
Telephone: (208) 342-3006
Facsimile: (208) 343-6608

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN FEUERBACHER and KRISTIANA FEUERBACHER, individually and as parents and next friends of RF, a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>ADA COUNTY, a political subdivision of the State of Idaho, MIKE PAANANEN, and DHARYAN COX,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br><br>**(Demand for Jury Trial)** |

Plaintiffs John Feuerbacher, Kristiana Feuerbacher, individually and as patents and next friends of RF, a minor child (Plaintiffs" or collectively, "Feuerbachers"), by and through their attorneys, for their Complaint against Defendants Ada County, Mike Paananen, and Dharyan Cox ( collectively "Defendants"), allege as follows:

### INTRODUCTION

1.      This civil rights and tort action arises from a stunning and unlawful disclosure of

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

confidential and legally protected information by officials of Ada County, Idaho. Despite clear knowledge that John and Kristiana Feuerbacher and their minor son RF were under a judicially issued protection order and moved to Idaho specifically to escape serious threats and harassment, Ada County officials recklessly and illegally transmitted the protected information, including the Plaintiffs' address and location information, directly to the person they were seeking protection from, thereby endangering the lives and safety of the entire Feuerbacher family.

2.      This was not an honest mistake. It was the culmination of a series of negligent, fraudulent, and unconstitutional acts and omissions by Ada County officials who ignored legal mandates, misrepresented facts to the family and law enforcement, and actively obstructed efforts to correct the disclosure. Plaintiffs now face another forced relocation, substantial emotional trauma, and permanent damage to their sense of safety and trust in the legal system.

3.      Plaintiffs bring this action under 42 U.S.C. § 1983 for violation of their constitutional rights, as well as under the Idaho Tort Claims Act, for negligence, negligent infliction of emotional distress, fraudulent and negligent misrepresentation, and violation of Idaho's public records and protection order laws.

## PARTIES

4.      Plaintiff John Feuerbacher is an adult resident of the State of Idaho and a former military bomb technician who suffers from diagnosed PTSD. He relocated from Florida to Idaho with his wife and son under court protection. He is a protected party in a no-contact/protection order issued against Natasha Hemric.

5.      Plaintiff Kristiana Feuerbacher is an adult resident of the State of Idaho and a protected party in a no-contact/protection order issued against Natasha Hemric. She relocated from Florida to Idaho with her husband and son under court protection.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

6.    Plaintiff RF is a minor and the son of John and Kristiana. He was explicitly included in the protection order and is represented here by his parents and next friends, John and Kristiana.

7.    Defendant Ada County is a political subdivision of the State of Idaho responsible for operating the Ada County Courthouse and Clerk's Office, including its Domestic Violence Court Assistance Office and the administration of civil protection orders.

8.    Defendant Mike Paananen ("Paananen") is the Associate Director of the Ada County Clerk's Office and at all times relevant was a resident of Boise, Ada County, Idaho.

9.    Defendant Dharyan Cox ("Cox") was, at all times relevant, a Clerk in the Ada County Court and a resident of Kuna and Boise, Ada County, Idaho.

10.    Plaintiffs are currently in the process of identifying other Ada County employees involved in the acts and omissions described herein and will seek leave to amend this Complaint to name them once discovery has commenced.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343 for the federal claims and supplemental jurisdiction under 28 U.S.C. § 1367 for related state-law claims.

12.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Ada County, Idaho.

## BACKGROUND

13.    Plaintiffs John and Kristiana Feuerbacher are a married couple who, along with their minor son RF, were previously residents of the State of Florida. During their time in Florida, the Feuerbachers were the victims of sustained stalking, harassment, threats of violence, and other threats perpetrated by a known female individual. The behavior of this individual escalated to such a degree that the Feuerbachers were forced to seek judicial protection.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

14.    The protective order prohibited the harasser from contacting or coming within a certain distance of John, Kristiana, or RF, and included provisions regarding digital communication, physical proximity, and third-party contact. The order was entered into the state protection order registry and provided to law enforcement for enforcement purposes.

15.    The Feuerbachers relocated to Ada County, Idaho, in December 2024 with the goal of rebuilding their lives in anonymity and security in a semi-remote location far from their harasser. Their move was not opportunistic; it was one of desperation and self-preservation. John Feuerbacher, a former military bomb technician, was diagnosed with post-traumatic stress disorder (PTSD), and the constant stalking exacerbated his condition. Hemric has provided the Feuerbacher's identity and location to online forums on which Kristiana conducted business under an alias.  The family's youngest son, RF, was forced to leave his school and friends in Florida.

16.    Upon establishing residence in Ada County, John and Kristiana Feuerbacher filed for a domestic civil protection order under Idaho law on February 6, 2025, to ensure enforcement of the existing Florida order and to obtain local law enforcement protection should any threats resurface. They filed the petitions with the Ada County Magistrate Court through standard procedures for domestic violence and stalking matters.

17.    That same day, the court reviewed the petition and granted a temporary protection order under Idaho Code § 18-7907. The order, signed by a Judge Comstock, directed that it be served upon the respondent and made clear that a hearing would be scheduled within 14 days. The material filed with the Petition included the names and address of the plaintiffs alone with other required sensitive information but was sealed from the public record in accordance with Idaho law due to the sensitive nature of the protective order.

18.    Ada County Court Clerk's Office was required to forward the sealed order to the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

Ada County Sheriff's Office for private, secure service of process.

19.     However, instead of handling the matter with the care required by law and the expectations of those relying on the protection of the courts, Defendant Dharyan Cox, an employee in the Ada County Court Clerk's Office, took it upon herself to forward the sealed and confidential protective order to a third-party private process server outside of the Sheriff's Office system. She did so without judicial authorization and contrary to internal protocol.

20.     On or about February 8, 2025, Cox transmitted a copy of the sealed protective order to a private process server for out-of-state service—rather than forwarding it to law enforcement as required. This private transmission included protected information and bypassed judicial authorization.

21.     Even more egregiously, the private process server served the protective order—including sealed confidential address and personal details—on Natasha Hemric, the restrained party.

22.     Ada County has alternatively claimed that the documents were actually served on and disclosed to Bandon Russell, the husband of the restrained party.  However, the process server's return indicated that the confidential documents were served directly on the restrained party Natasha Hemric. **Exhibit A.**

23.     Plaintiffs were alerted to the breach of confidentiality on February 14, 2025, when Vinny Sepveda from the Ada County Sheriff's Office called John to inform him that Ada County Sheriff's Office would be running extra patrols around Plaintiffs' home.

24.     Plaintiffs immediately contacted the Ada County Court Clerk's Office to determine what occurred. Over the course of several days, they were met with evasive responses, inconsistent explanations, and ultimately, outright falsehoods. On February 14, 2025, Defendant Michael

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

Paananen, Associate Director of the Ada County Clerk's Office, told John via phone that the order had only been transmitted to the sheriff's office in Tennessee and that "[t]here is no accidental way" that the confidential information could have been served and repeatedly blamed the error on the Tennessee sheriff.  He strongly stated that Ada County has not provided the information to the process server, claimed to have the email to the Tennessee sheriff's office in his hands, and stated "[a] Sheriff's office should not ever have that happen." He further instructed John to file a tort claim against the Tennessee county for the error.

25.    On February 14, 2025, the Plaintiffs filed a Notice of Tort Claim with Ada County attached hereto as **Exhibit B**.

26.    On February 20, 2025, John spoke with Sandra Barrios, the Ada County Trail Administrator, in an attempt to obtain additional information.  After initially stating that the confidential information was not "anything that would ever be given to the respondent."  She stated that she would need to do some research and get back to him.  She stated that the service of protection orders was governed by policies and statutes.  She further stated that "in many instances the Sheriff's office will not serve and that documentation still needs to be served…" She was unable to identify the statute but agreed to provide it to John. She agreed that Ada County was required to attempt to serve with the sheriff's office and may only use a process server if the local sheriff's office refuses to serve the documents.  She stated that "[i]f the Sheriff's office is willing and able to serve the documents, the documents go to the Sheriff's Office."

27.    The disclosure to an individual closely associated with the respondent caused immediate and lasting harm. The Feuerbacher's 9-year-old son, RF, began experiencing panic attacks and night terrors. John's PTSD symptoms intensified, requiring medical treatment and work accommodation. John and Kristiana were forced to install security cameras, reinforce the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

doors, and contact the school district to request special privacy measures for RF.

28.     Ultimately, the family began preparing to relocate again. Once more, they were driven from their home by government negligence and betrayal of trust. As of the date of this filing, the Feuerbachers are actively making arrangements to leave Idaho to restore the safety they briefly thought they had secured.

## FACTUAL ALLEGATIONS

### A.  Initial Protection Order and Safety Concerns

29.     In February 2025, John and Kristiana Feuerbacher obtained a temporary civil protection order from the Fourth Judicial District Court in Ada County, Idaho, naming Natasha Hemric as the sole respondent. Hemric had subjected the Feuerbacher family—Kristiana, her husband John, and their minor son RF—to a sustained pattern of harassment, stalking, and psychological manipulation. The order was sought after repeated incidents and escalating life threats to the life and safety of the Plaintiffs, which left the family in fear for their safety, emotional well-being, and ultimately their lives.

30.     In order to obtain the temporary protective order, the Plaintiffs were required to provide significant personal details including, home address, social security numbers, the locations of RF's school, and much more.  The Plaintiffs were concerned about the potential disclosure of these personal details that, if placed in the hands of Natasha Hemric, would provide her with her weapons of choice in her continued campaign of harassment and threats of violence.  John was personally assured by Ada County employees that this information was confidential and would not be disclosed to Natasha Hemric.

31.     A Temporary Protection Order was signed by Judge Comstock on February 6, 2025, and included terms prohibiting Hemric from contacting any member of the Feuerbacher family

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

directly or indirectly. It also prohibited her from coming near their residence, place of employment, or their son's school. These provisions were entered pursuant to Idaho statutes and court policy aimed at protecting victims of harassment and violence from renewed exposure.

32.    In line with Idaho law and court protocol, the Court ordered that Hemric be personally served with the protection order, and that the sealed address and confidential documents be safeguarded from disclosure, including from any third party acting on Hemric's behalf. The service of process was to be carried out in a manner consistent with the protection of the petitioners' confidential information. No authorization was given for unsealing the documents, including the sealed address page and confidential information, or for service upon anyone other than the named respondent.

33.    These confidentiality protections were critical. In 2024, the Feuerbachers had relocated from Florida to Idaho to escape the reach and influence of Natasha Hemric. The move had been prompted by a long and traumatic history of harassment that had followed them across state lines. In Idaho, the family took extensive precautions to remain anonymous—registering under sealed court filings, avoiding public records exposure, and minimizing any trace of their new address. The Court's confidentiality order was not a formality—it was an essential safeguard that enabled the family to regain a sense of security, enroll their son in school, and rebuild their lives free from fear.

### B.  Misstatements and Mishandling by Ada County Staff

34.    In early February 2025, John Feuerbacher contacted the Ada County Clerk's Office to confirm that the recently issued protection order would be handled in accordance with Idaho law. He explicitly inquired whether the order would be transmitted to the appropriate law enforcement agency in Tennessee for service, as is required for enforcement and confidentiality

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

compliance under Idaho Code § 39-6311.

35.    Over the following days the Plaintiffs repeatedly inquired about the status of service without receiving a satisfactory response.

36.    On February 12, 2025, the Plaintiff personally went to the Ada County Courthouse to inquire about the status of service.  They were told that the documents were mailed to the Lewis County Sheriff's Office on February 6.  However, John had been informed that the Lewis County Sheriff's Office had not received the documents.  John provided the fax number for the Lewis County Sheriff's Office as that office had indicated it would accept the documents by fax and proceed with service.

37.    Unbeknownst to Plaintiffs at the time, the documents had already been served on February 8, 2025, on Respondent or her husband, Russell, by a private process server hired by Ada County.

38.    In the days following, Barrios responded—both by phone and email—that service would be completed through law enforcement. She assured John that the order would be routed to the local Sheriff's Office and that "no identifying information would be visible to the other party." These assurances gave Plaintiffs confidence that judicial sealing protections and statutory service procedures were being followed.

39.    In reality, these statements were false and materially misleading. Ada County did not transmit the order to law enforcement in Tennessee. Instead, Barrios arranged for a private process server—not employed by or affiliated with law enforcement—to deliver the protection order directly. This private server was not instructed to withhold any confidential information and was not authorized to serve protected court documents containing sealed address information.

40.    The version of the protection order given to the process server was unredacted and

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

included Plaintiffs' full Idaho street address, contact information, and other sealed personal details. Including a document entitled "Law Enforcement Only." This version should never have been served on any party, let alone someone closely associated with the restrained individual. This was the exact material Plaintiff had been assured by Ada County employees would not be disclosed.

41. The private process server proceeded to serve the documents directly Hemric or Russell, who was not the restrained party, was not named in the order. Neither Hemric nor Russell were legally entitled to receive any confidential document related to the Plaintiffs, let along the sealed documents. At the time of service, Russell and the restrained party shared a residence and maintained a close familial relationship. The delivery of the order and confidential documents to Hemric or Russell to an unauthorized and improper disclosure of sensitive judicially sealed information.

42. This mode of service directly contradicted the requirements of Idaho Code § 39-6311, which states that protection orders "shall be personally served by a law enforcement officer unless the court directs otherwise." No such judicial direction existed in this case. The use of a private process server, particularly without redaction of sealed content, was not authorized by the court or permitted under applicable rules.

43. Further, Ada County's internal protection order protocols, as reviewed by Plaintiffs through records requests, make clear that out-of-state service involving sealed orders must be coordinated through the receiving jurisdiction's law enforcement agency to ensure enforceability and confidentiality. The actions of Cox and other Ada County employees were in direct violation of these protocols.

44. At no point did Ada County or Cox seek or obtain judicial approval to deviate from statutory or policy-based procedures. They acted without court guidance and with apparent

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

indifference to the foreseeable harm posed by improper disclosure of the Feuerbachers' protected location.

45. When John later discovered that the confidential documents and order had been served on Hemric or Russell, he immediately contacted Ada County seeking clarification. On February 20, 2025, Sandra Barrios claimed that "we always contact law enforcement where the respondent lives and we try to go through them." She further stated that "If they refuse at times we have to go through a private vendor, a process server basically to get the documents served." Finally, she falsely stated that "[w]e don't use private process servers unless law enforcement refuses." These statements were later proven false through a recorded call to the Lewis County Sheriff's Office, in which officials confirmed they had never received a request for service and would have gladly executed it had they been asked.

46. On February 21, 2025, Barrios also stated that the information was provided by Ada County "to a private entity so that the order could be served before the hearing date because the Sheriff's office could not accomplish service on time." She indicated the while confidential information was provided to the process server, the documents indicated that the information should not be served.  Additionally, she stated that she had determined that "they did not execute service properly." This too was mostly false. While the service was not executed properly, Ada County never provided the documents to the Lewis County Sheriff's Office before retaining ABC Legal Services to serve the documents.

47. Later that same day, February 21, 2025, Paananen informed John that the Trial Court Administration ("TCA"), a state entity, had "sent it over" and he had "a feeling that someone up there sent it to a private server."  He falsely claimed that Cox had not sent anything out but only provided it to the TCA for service. He stated that "I think what happened, my theory at this point

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

is that the TCA got it and the TCA probably faxed it over to somebody and that's why he got copies of it served to him by a private person." He further stated that while uncertain whether TCA could use a private process server but in "this case type that is highly unusual for something of this kind of sensitivity." Finally, he stated "[s]omeone fucked up really bad."

48.    Plaintiffs reasonably relied on Ada County's assurances that the legal system would protect them. Instead, the very institution charged with safeguarding victims of domestic violence facilitated the unlawful disclosure of their confidential information bypassing law enforcement, ignoring judicial procedures, and using an unregulated third party for service.

49.    The unlawful release of sealed information to Hemric or Russell, an individual aligned with the restrained party, resulted in immediate fear and chaos. It forced Plaintiffs to reconsider their security plans and triggered the need to again prepare for emergency relocation.

50.    Ada County has never acknowledged the impropriety of its actions. Officials have maintained that service was proper and continue to deflect responsibility by citing a non-existent refusal by Tennessee law enforcement and other unsubstantiated justifications.

51.    This conduct, which includes affirmative misstatements, unauthorized deviation from legal protocol, and improper disclosure of judicially sealed information, constitutes gross negligence at minimum—and supports claims for constitutional and statutory violations based on Ada County's deliberate indifference to Plaintiffs' safety.

### C. Aftermath and Further Obstruction

52.    On or about February 14, 2025, Plaintiffs received confirmation that the protection order and confidential materials had been physically served on Hemric or Russell.

53.    The improperly disclosed documents were not generic notices or a cover letter. It was the fully executed, court-sealed protection order, which included John, Kristiana, and RF's

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

exact street address in Idaho, social security numbers, school locations and other confidential private information — the very information sealed by the issuing judge to protect their safety and the very information sought by Natasha Hemric to continue her harassment and threats to the lives and livelihood of the Plaintiffs. Beyond the Order, the documents included confidential private information about the Plaintiffs including their home address and social security numbers.

54.    This disclosure occurred just months after Plaintiffs relocated across the country to escape Natasha Hemric, and they had taken extensive steps to keep their location confidential, including limiting communication with extended family and removing digital footprints.

55.    John immediately contacted Ada County demanding an explanation. Ada County and TCA employees falsely blamed the use of the private server on the Lewis County Sheriff's Office in Tennessee.

56.    In a subsequent call, Barrios claimed that the Lewis County Sheriff's Office was unable to serve the order before the schedule trial on the permanent restraining order, and that there was no choice but to use a private process server. This was false.

57.    Russell admitted to local Tennessee law enforcement that he opened, read, and shared the confidential information directly with Hemric before returning it via mail to Ada County.

58.    Further, in a recorded phone call with the Lewis County Sheriff's Office, John was told that no such request for service was ever received by their office, and that they would have gladly served the order had it been transmitted to them. This directly refutes the County's narrative and shows that Defendants never even attempted lawful service through the proper channel.

59.    On February 14, 2025, Plaintiffs submitted a formal Notice of Tort Claim to Ada County, detailing the illegal disclosure, misrepresentations, and resulting harm to their family.

60.    That same day, Plaintiffs began preparing for another forced relocation, now

**COMPLAINT AND DEMAND FOR JURY TRIAL - 13**

knowing that Hemric and Russell had access to their protected location.

61. In the weeks following the tort notice, Ada County declined to engage in corrective discussions, refused to confirm whether policies were changed, and declined to provide Plaintiffs with any information regarding internal investigations or remedial action.

62. Plaintiffs later learned through independent research and public records requests that Ada County continued to use the same flawed transmission methods in other protection order cases, placing additional families at risk and indicating systemic policy failure rather than an isolated lapse.

### D. Continuing Harm and Emotional Trauma

63. Following the unauthorized disclosure of the Feuerbachers' protected Idaho home address, the family experienced immediate and profound emotional distress. The sense of safety and security they had worked tirelessly to rebuild after fleeing Florida was shattered within hours of learning that the sealed order had been served directly on the husband of the restrained party.

64. Their son, RF, was only 9 years old at the time. Previously diagnosed with anxiety stemming from prior threats and exposure to conflict, he began exhibiting acute symptoms of psychological distress. These included panic attacks, sleep disturbances, and refusal to attend school. He ultimately had to be withdrawn from his middle school program for the remainder of the academic term. He was referred to trauma-informed counseling services and continues to receive therapy at the time of this filing.

65. John Feuerbacher, a decorated combat veteran and former military bomb technician, has been diagnosed with chronic post-traumatic stress disorder (PTSD). The knowledge that his family's confidential information was disclosed to an individual closely associated with the restrained party, undermining the protections afforded by the court's sealing order. This triggered

**COMPLAINT AND DEMAND FOR JURY TRIAL - 14**

a severe psychological relapse. John experienced heightened hypervigilance, recurring nightmares, and debilitating anxiety.  John struggles every day to drop RF off at school.  As a consequence, RF has missed at least eleven days of school during the current school year already.

66.    The impact on John was not limited to mental health symptoms. His professional life was disrupted, his sleep patterns destroyed, and his role as a father and protector undermined by the government's failure to honor the protective measures he had relied upon. The betrayal of trust by court officials compounded his PTSD symptoms, resulting in a deepening fear that no authority could keep his family safe.

67.    Kristiana Feuerbacher's, work has been significantly impacted.  Her mental health has suffered, including a lack of sleep, and inability to go into public.  She began researching relocation options immediately—barely a year after uprooting her life to escape a harasser in Florida. This marked the second cross-country move the family would be compelled to undertake for their safety in less than 12 months. She experienced insomnia, chronic fatigue, and an ongoing sense of dread that Hemric and/or Russell might show up at their door, empowered by the information recklessly leaked by Ada County.

68.    Ada County officials have never issued an apology, offered assistance, or taken corrective action. Instead, they doubled down on the original misconduct by repeatedly misrepresenting the method of service, falsely claiming that Tennessee law enforcement had refused to assist, and minimizing the consequences of their disclosure. Despite being informed of the impact their conduct had caused, they refused to investigate the breach or engage in remediation.

69.    Ada County representatives have also failed to issue any written acknowledgment of fault, nor have they reviewed or revised internal procedures to ensure that court staff do not

**COMPLAINT AND DEMAND FOR JURY TRIAL - 15**

repeat the same mistake. The lack of accountability has exacerbated Plaintiffs' trauma, leading to profound disillusionment with the legal system they turned to for protection.

70.     The unlawful disclosure was not merely negligent—it was affirmatively deceptive and systematically harmful. Ada County employees knowingly bypassed required legal safeguards, provided protected information to the restrained party, failed to notify Tennessee law enforcement, and engaged in a series of misrepresentations designed to conceal the error. These actions—combined with their refusal to take responsibility—have inflicted lasting damage.

71.     The consequences of this violation are not temporary. The family now lives with the constant fear that Hemric and/or Russell may use the leaked address to reinitiate contact, stalk, or retaliate. They have incurred substantial financial burdens in relocating, re-securing identity protection services, and accessing mental health care, in addition to the emotional and educational harm suffered by their minor child.

### E.  Violation of Law and Policy

72.     Under Idaho Code § 39-6311(1), law enforcement is required to serve protection orders unless otherwise ordered by the court. In the present case, no judicial modification or alternative method of service was ordered. The order issued by the Idaho Magistrate Court was sealed and directed for law enforcement service consistent with standard protective order protocols.

73.     The Idaho Protection Order statute further provides that "[l]aw enforcement shall personally serve protection orders unless otherwise directed by the court," reflecting the critical importance of ensuring the integrity, traceability, and proper documentation of service in domestic violence cases. The legislature expressly designed this safeguard to prevent exactly the type of disclosure that occurred here.

74.     Ada County's own internal Domestic Violence Court protocols—which are

**COMPLAINT AND DEMAND FOR JURY TRIAL - 16**

distributed to court clerks and staff—require that all service of protection orders across jurisdictional lines be coordinated through law enforcement agencies in the receiving state. These policies exist specifically to prevent exposure of protected addresses and to ensure enforceability under the Interstate Enforcement of Domestic Violence Protection Orders Act.

75.    At least two separate internal documents—titled "Protection Order Service Procedures" and "Clerk Guidance for Out-of-State Service"—obtained by Plaintiffs through public record requests state unequivocally that court staff "must not directly transmit sealed or protective documents to the Respondent party" and must "route service through law enforcement unless directed otherwise by the judge."

76.    Cox, acting within her official duties, knowingly bypassed these protocols and statutory requirements. She affirmatively chose to have a private process server—not law enforcement—deliver the sealed protective order. The documents were handed to Hemric or Hemric's husband, Russell, who provided them to Hemric directly, by private process server rather than served in accordance with statutory requirements for personal service on the respondent by law enforcement.

77.    Ada County's decision to have a private process server deliver the order to Hemric or Hemric's husband, Russell directly, while also including the confidential information in violation of the sealing provision, was contrary to Idaho court rules, statutory law, and multiple Ada County policy documents reviewed by Plaintiffs prior to filing this Complaint.

78.    This action constituted not only a breach of legal duty, but a violation of the sealed nature of the order under Idaho Code § 39-6306(2), which prohibits the release of protected information contained within domestic violence orders. There is no exception in the statute allowing disclosure to the restrained party, nor is there any record that the judge authorized such a

**COMPLAINT AND DEMAND FOR JURY TRIAL - 17**

deviation.

79.     The disclosure was not the result of clerical error or inadvertence; it was the product of an affirmative choice by Cox and/or her supervisors, carried out knowingly, without judicial approval, and in contravention of well-established rules. Cox's engagement of the private process server and forwarding of the confidential materials was sent from her Ada County official address and included no indication that the confidential information had been reviewed, redacted, or deemed unprotected.

80.     As a direct result of this statutory and procedural violation, Plaintiffs' protected address and confidential private information was disclosed to an individual with a documented history of stalking, manipulation, and emotional abuse. The danger created by this act was not abstract or speculative, it was immediate, real, and personal.  In fact, Plaintiffs have suffered continuing harassment and electronic stalking, including phone numbers being leaked to scammers seeking personal banking information, all in line with Natasha Hemric's history of stalking and harassment. Additionally, their home in Idaho has been spray painted with a threatening message presumably from Natasha Hemric or her agents.

### F.  Misrepresentations and Cover-Up

81.     Between February 6 and February 21, 2025, Ada County and TCA employees made at least five specific misrepresentations to Plaintiffs or law enforcement, including:

    a.  Claiming that the order had been served by the Lewis County Sheriff's Office, when in fact no law enforcement agency in Tennessee had received or attempted service of the order.

    b.  Stating that law enforcement refused or was unable to serve the order, which is belied by the direct statement of a Lewis County Sheriff's Office. Plaintiffs

confirmed this with multiple calls to the Lewis County Sheriff's Office.

c. Asserting that they had no discretion in the method of service and was required to send the order directly, when in fact Idaho's service protocols direct that all protection orders be served by law enforcement, and Cox affirmatively chose to bypass this procedure by hiring a private process server, who handed the confidential documents directly to Hemric or Russell who provided them to Hemric.

d. Falsely blaming the disclosure on the local Tennessee law enforcement when, in fact, Ada County had chosen not to use local law enforcement for service in violation of Idaho law.

e. Telling John, "this happens all the time," in an apparent attempt to minimize the violation and normalize what was in fact a gross breach of confidentiality, and in doing so, discouraging the filing of a formal complaint or escalation to judicial authorities.

82. These misrepresentations were made both verbally and in writing. At least two statements were made via recorded telephone conversations. The statements were made in the official capacity by representatives of the Ada County court system.

83. Plaintiffs made repeated requests to clarify the status of service and to confirm that their sealed address had not been disclosed. Ada County employees repeatedly deflected or falsely assured them that all procedures had been followed properly, and that any issues were due to local Tennessee law enforcement's mistakes.

84. These assurances were designed to conceal the fact that the protected order had already been compromised by Ada County, to avoid scrutiny of internal procedures, and to prevent escalation of the issue to judicial or administrative oversight. Defendants' conduct amounts to an

**COMPLAINT AND DEMAND FOR JURY TRIAL - 19**

intentional cover-up of a critical public safety error.

85.    Plaintiffs now live in fear that Hemric and/or Russell will attempt to contact, harass, harm, or locate them using the improperly disclosed address. Hemric has a history of retaliation and obsessive behavior, and had previously violated a Florida protection order, leading to the family's original relocation to Idaho.

86.    Since the disclosure, the Feuerbacher family has had to take active security precautions, including relocating the child to a new school, altering daily routines, and consulting with relocation specialists. The family has re-initiated safety planning with domestic violence support organizations and law enforcement.

87.    Kristiana has experienced panic attacks, nightmares, and sustained hypervigilance as a result of the breach. John, a combat veteran with diagnosed PTSD, has reported regression in symptom management due to the perceived loss of control and threat to his family's safety.

88.    The consequences of this breach are ongoing and permanent. Plaintiffs are actively preparing to relocate again, incurring tens of thousands of dollars in expenses, and enduring severe emotional trauma and disruption to their lives, education, and work.

89.    These consequences were entirely preventable. Plaintiffs placed their trust in the protective order system after fleeing years of abuse, only to have their confidentiality violated not by a private actor, but by the very system tasked with protecting them.

90.    Plaintiffs now live in fear that Hemric and/or Russell will attempt to contact, harass, or harm them using the improperly disclosed information.

91.    The consequences of this breach are ongoing and permanent. Plaintiffs are actively preparing to relocate again, incurring tens of thousands of dollars in expenses, and enduring severe emotional trauma and disruption to their lives, education, and work.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 20**

## CLAIMS FOR RELIEF

### COUNT I
### Violation of 42 U.S.C. § 1983 – Fourteenth Amendment
### (Right to Privacy and Bodily Integrity)

92.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

93.    The Fourteenth Amendment to the United States Constitution protects individuals from arbitrary and unjustified intrusions by the government into matters so deeply rooted in privacy and autonomy as to be deemed fundamental—including the right to personal security, bodily integrity, familial safety, and the ability to live free from government-enabled threats of violence.

94.    The right to privacy in one's residential address and location, especially in the context of a court-ordered protection from stalking or abuse, is an integral part of these constitutional guarantees. Courts across the country have recognized that the government may not disclose sensitive personal information where such disclosure would foreseeably place the individual in harm's way.

95.    Plaintiffs in this case had obtained a lawful civil protection order from the Idaho state courts specifically to shield themselves—and their minor child—from a known and documented stalker. The order expressly directed that the protected address remain sealed.

96.    The sealed address and other confidential information was delivered by private process server retained by Ada County, who served it directly to Hemric or her husband, Brandon Russell, on or about February 8, 2025, by the Ada County Court, without redaction or authorization, and directly to the retrained party or her husband of the individual restrained by the court order.

97.    Plaintiffs had specifically requested that their confidential address information

**COMPLAINT AND DEMAND FOR JURY TRIAL - 21**

remain sealed and protected, and the issued Order to Seal reflected that judicial determination. The Defendants' disclosure nullified the effectiveness of the protective order and rendered the family vulnerable to renewed harassment.

98.    The Idaho judiciary and law enforcement were on notice of the violent history underlying the protection order, including threats of stalking and retaliation, and therefore the sensitive nature of Plaintiffs' address was obvious.

99.    The disclosure of sealed and sensitive location information to a known harasser falls within the core of privacy protections recognized by *Whalen v. Roe*, 429 U.S. 589 (1977), and its progeny, and constitutes an egregious breach of Plaintiffs' constitutionally protected liberty interests in bodily integrity and domestic safety.

100.    Defendants were fully aware of the protective nature of the sealed order and the dangers posed by the restrained party. They were informed that the protected parties had relocated from Florida to Idaho for the express purpose of avoiding continued harassment.

101.    Despite this knowledge, Defendants affirmatively disclosed Plaintiffs' confidential, court-sealed information and address to the restrained party or her husband by private process server retained by Ada County, who served it directly to Hemric or Russell, including attaching an unredacted version of the protection order and supporting information and failing to employ law enforcement for secure service as required by law and policy.

102.    The danger created by Defendants was not merely passive; it involved affirmative conduct by government officials, including the deliberate transmission of a sealed protective order to the restrained individual, an act which removed all protective distance the court had imposed.

103.    Defendants had actual knowledge of the underlying threats and domestic history, and their acts foreseeably exposed Plaintiffs to increased danger. This goes beyond mere

**COMPLAINT AND DEMAND FOR JURY TRIAL - 22**

negligence and rises to deliberate indifference.

104.    This conduct falls squarely within the "state-created danger" doctrine recognized in *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006), where a government official affirmatively increased the danger to a domestic violence victim through careless and unauthorized communication.

105.    This disclosure was not inadvertent. It reflected a series of intentional decisions—such as refusing to use the sheriff for service despite repeated offers, affirmatively hiring a private process who served the documents to the husband of the restrained party with personally identifiable information, and misrepresenting the redactions or lack thereof.

106.    The government's disclosure of Plaintiffs' sealed address—after a judicial determination that this information must be protected—represents a grave violation of their constitutional rights to personal security, bodily autonomy, and family integrity. The responsibilities of court clerks with respect to protective orders, particularly those involving minors and sealed address information, are ministerial and governed by administrative procedure. These include following court-issued seals, redacting protected information, and ensuring orders are served through law enforcement.

107.    The decision to deliver by private process server retained by Ada County, who served it directly to Hemric or Russell, constituted a deviation from established policy and violated a non-discretionary duty of care, thus precluding the application of discretionary immunity under I.C. § 6-904(1).

108.    Plaintiffs had a special relationship with the Court due to their participation in the protective order system and reasonably relied on the Court's compliance with sealing and redaction procedures to protect their safety.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 23**

109.    The danger created by Defendants' actions was immediate, severe, and foreseeable. The restrained party had previously engaged in threatening conduct, which was known to Defendants and formed the very basis for the court's protective order.

110.    As a direct and proximate result of this unconstitutional conduct, Plaintiffs were forced to take emergency steps to secure their safety, including preparations to again uproot their lives and relocate, enduring severe emotional trauma, financial cost, and destabilization of their family life and their minor child's education. Plaintiffs suffered substantial emotional trauma including anxiety, hypervigilance, and fear for physical safety, exacerbated by their prior history of being stalked and threatened by the individual who received the protected address.

111.    The minor Plaintiff, RF, experienced sleep disturbances, academic withdrawal, and psychological distress, consistent with trauma resulting from exposure to danger. These conditions have been documented through school counselors and medical records.

112.    Defendants' failure to acknowledge the mistake or implement corrective procedures worsened the psychological distress, as Plaintiffs were forced to prepare for yet another relocation for their safety, causing further disruption to family stability.

113.    Defendants' actions were taken under color of state law and reflect deliberate indifference to Plaintiffs' clearly established constitutional rights. No reasonable public employee in Defendants' position could have believed this conduct to be lawful or consistent with due process.

114.    Accordingly, Plaintiffs are entitled to compensatory damages, punitive damages where appropriate, and an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as all other relief deemed just and proper by this Court.

115.    On multiple occasions, Defendants assured Plaintiffs via telephone and email that

**COMPLAINT AND DEMAND FOR JURY TRIAL - 24**

the protective order would and was served by law enforcement.

116.    These representations were false. The Defendants had already served the full, unredacted order directly to the husband of the restrained party on February 8, 2025. Plaintiffs relied on these misstatements by declining to seek emergency judicial relief or alternative security measures.

**COUNT II**
**Violation of 42 U.S.C. § 1983 – Fourteenth Amendment**
**(State-Created Danger)**

117.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

118.    Under the Fourteenth Amendment's Due Process Clause, governmental actors may be held liable under the "state-created danger" doctrine where they affirmatively place individuals in danger they would not otherwise face, particularly where the danger is foreseeable and the plaintiff is a known or readily identifiable victim.

119.    Ada County employees, at the time they made assurances to Plaintiffs, that she had not followed established court service procedures, had bypassed law enforcement, and had directly transmitted the protected order to the husband of the restrained party.

120.    The statements were knowingly false and were made with the intent to deceive Plaintiffs and to obscure her own misconduct, thereby preventing the initiation of immediate corrective action.

121.    Plaintiffs justifiably relied on these fraudulent representations, believing that the protective order remained secure, and as a result, refrained from seeking an emergency motion for reissuance or staying at a confidential address.

122.    At all relevant times, Defendants acted under color of state law and were subject to

**COMPLAINT AND DEMAND FOR JURY TRIAL - 25**

the constraints of 42 U.S.C. § 1983 and the protections afforded to Plaintiffs by the United States Constitution.

123.    Plaintiffs sought protection from a known stalker through a civil protection order issued by an Idaho state court, which explicitly directed that their residential address remain sealed and confidential.

124.    Defendants were fully aware of the reason for the sealing provisions, including the credible threats of harm, the history of stalking and harassment, and the inclusion of a minor child among the petitioners.

125.    Notwithstanding this knowledge, Defendants affirmatively increased the danger to Plaintiffs by:

   a.  Directly contacting the restrained individual without appropriate safeguards;

   b.  Transmitting the sealed protection order in a manner that revealed the Plaintiffs' confidential address;

   c.  Misleading Plaintiffs about the method, timing, and effectiveness of service— thereby creating a false sense of security; and

   d.  Undermining law enforcement's ability to conduct a proper, safe, and coordinated service of the order, including by misrouting or intercepting law enforcement communications.

126.    These affirmative acts were not mere negligence or oversight. They created a new and heightened danger to Plaintiffs, one that would not have existed but for Defendants' unlawful and reckless conduct.

127.    By disclosing the very information Plaintiffs sought to shield through judicial process, Defendants facilitated the restrained party's knowledge of their location and undermined

**COMPLAINT AND DEMAND FOR JURY TRIAL - 26**

the fundamental purpose of the protection order.

128.    This danger was not speculative or remote—it was immediate, particularized, and entirely foreseeable, given the documented history of harassment and the explicit terms of the court's sealing order.

129.    As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiffs experienced real and ongoing harm, including fear for their physical safety, trauma, disrupted housing stability, educational harm to the minor Plaintiff, and other emotional and economic damages.

130.    Defendants acted with deliberate indifference to Plaintiffs' constitutional rights and the grave consequences of their actions. No reasonable official in Defendants' position could have believed that disclosing a sealed protection order with unredacted information comported with due process or public safety obligations.

131.    Plaintiffs seek all available relief under 42 U.S.C. § 1983, including compensatory damages, punitive damages (where appropriate), reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

## COUNT III
### Negligence

132.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

133.    Defendants owed Plaintiffs a clear and well-established duty of care in the receipt, processing, and service of sealed court documents, including civil protection orders issued under Idaho Code § 18-7907 and related provisions governing address confidentiality in domestic violence and stalking matters.

134.    It was reasonably foreseeable that failure to exercise due care in the handling of

such sensitive court orders would cause significant harm to petitioners—particularly where, as here, the order explicitly directed that the respondent be served without disclosing the petitioners' confidential address.

135.    Despite this duty, Defendants breached its obligations by:

    a.    Transmitting a copy of the sealed protection order that included unredacted address information for Plaintiffs, including a minor child;

    b.    Failing to follow Idaho Court rules and internal protocols for redaction, address shielding, and service of protective orders;

    c.    Allowing unauthorized or improperly trained personnel to handle sensitive legal documents involving stalking and safety threats; and

    d.    Making repeated, inaccurate representations to Plaintiffs regarding what information had been disclosed and how the order had been served.

136.    Plaintiffs relied on the statutory established procedures in making the decision to engage in the protective order process.

137.    Defendants' negligent handling of the sealed order was not an isolated error, but part of a systemic failure to implement appropriate safeguards, oversight, and training for employees responsible for serving and protecting high-risk litigants.

138.    As a direct and proximate result of these breaches, Plaintiffs suffered concrete harm, including:

    a.    The disclosure of their confidential residential address to the restrained party, an individual with a history of harassment and threats;

    b.    The immediate fear and need to consider relocation for their physical safety;

    c.    Severe emotional distress, panic, and hypervigilance;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 28**

d.  Disruption of the minor Plaintiff's schooling and mental health; and

e.  Loss of faith in the legal process designed to protect victims of abuse and stalking.

139.    Idaho law recognizes a cause of action for negligence where a governmental actor breaches a ministerial duty that places identifiable individuals at foreseeable risk of harm— particularly when such duty arises from statutory protections and court orders, as in this case.

140.    Plaintiffs' damages are ongoing and include emotional distress, out-of-pocket costs for enhanced security, potential relocation expenses, loss of trust in judicial remedies, and interference with family stability and educational continuity.

141.    Plaintiffs seek all available remedies, including compensatory damages, costs, attorney's fees as permitted by statute, and any other relief the Court deems just and proper.

## COUNT IV
### Negligent Infliction of Emotional Distress

142.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

143.    At all relevant times, Defendants owed Plaintiffs a duty to exercise reasonable care in the handling, transmission, and protection of confidential information contained in sealed court orders and filings, particularly those involving victims of stalking and domestic harassment.

144.    Defendants knew, or reasonably should have known, that the disclosure of Plaintiffs' protected information to the restrained individual would foreseeably cause significant psychological trauma, particularly to the minor child and the veteran parent with PTSD.

145.    Despite this clear duty, Defendants negligently handled Plaintiffs' confidential information, transmitted it to unauthorized third parties, and made repeated false statements concerning the nature and legality of the disclosure.

146.    As a direct and proximate result of Defendants' negligent acts and omissions,

**COMPLAINT AND DEMAND FOR JURY TRIAL - 29**

Plaintiffs experienced severe emotional distress, including but not limited to anxiety, panic attacks, hypervigilance, sleeplessness, fear for their personal safety, and feelings of betrayal and helplessness.

147.    Plaintiff John Feuerbacher, a combat veteran diagnosed with post-traumatic stress disorder (PTSD), suffered acute psychological deterioration following the disclosure of his family's confidential address. The breach triggered severe PTSD symptoms, including flashbacks, nightmares, and loss of occupational stability requiring medical intervention.

148.    Plaintiff Kristiana Feuerbacher experienced continuous fear, anxiety, and emotional exhaustion as a direct result of Defendants' negligence, compounded by the realization that court officials, whom she trusted to protect her family, had instead placed them in immediate danger.

149.    Minor Plaintiff RF, age twelve, began experiencing nightmares, school avoidance, and panic attacks following the unauthorized disclosure and the family's subsequent safety measures, including preparing for relocation and increased home security.

150.    Defendants compounded Plaintiffs' distress by refusing to acknowledge wrongdoing, failing to correct the record, and continuing to mislead Plaintiffs regarding the method and timing of service and the steps taken to protect their information after the breach.

151.    Defendants' actions constitute negligent infliction of emotional distress under Idaho law because:

    a.   They owed Plaintiffs a legal duty of care;

    b.   They breached that duty by mishandling confidential information and misrepresenting material facts;

    c.   It was reasonably foreseeable that such misconduct would cause extreme emotional

**COMPLAINT AND DEMAND FOR JURY TRIAL - 30**

harm; and

d. Plaintiffs in fact suffered severe emotional injury directly caused by Defendants' breach.

152. The emotional injuries sustained by Plaintiffs were serious, medically recognized, and objectively verifiable through treatment records, counseling notes, and contemporaneous documentation.

153. As a result, Plaintiffs have suffered damages including but not limited to mental anguish, medical expenses for counseling and treatment, relocation costs, lost income, disruption of education for their minor child, and loss of enjoyment of life.

154. Plaintiffs seek compensatory damages for all such injuries, as well as costs and attorney's fees as permitted by law.

## COUNT V
### Failure to Follow Mandated Policies and Customs
### (42 U.S.C. § 1983 – Monell Liability Against Ada County)

155. Plaintiffs reallege and incorporate by reference all prior paragraphs as though fully set forth herein.

156. Ada County is a local government entity subject to suit under 42 U.S.C. § 1983 for constitutional violations arising from its official policies, customs, and practices, or from the deliberate indifference of its policymakers.

157. Ada County, through its Clerk's Office and the Domestic Violence Court Coordinator, maintained internal policies and standard operating procedures concerning the handling, redaction, and service of protection orders, especially in cases involving domestic violence and sealed address provisions.

158. These written and unwritten policies were created and implemented to ensure that

**COMPLAINT AND DEMAND FOR JURY TRIAL - 31**

protected parties could seek judicial relief without compromising their personal safety or location privacy, particularly where relocation and address confidentiality were essential.

159.    Ada County's own rules required:

a.   That sealed protection orders be treated as confidential and not released in unredacted form;

b.   That out-of-state service be routed through appropriate law enforcement channels, not private process servers;

c.   That any deviation from those procedures require judicial approval;

d.   That court staff and coordinators communicate honestly and accurately with petitioners regarding service and status.

160.    Despite these policies, Ada County failed to follow them. Instead, it permitted a sealed protection order—containing the Feuerbachers' confidential Idaho address—to be delivered to a private process server for direct delivery to the spouse of the Respondent, in clear violation of the Court's sealing directive and Ada County policy.

161.    This deviation was not a one-off error, but the result of either (a) a formal Ada County policy authorizing such unlawful handling of sealed documents, or (b) a longstanding, widespread practice among staff amounting to deliberate indifference to the privacy and safety rights of protected parties.

162.    Further, multiple final decisionmakers, including the Domestic Violence Court Coordinator, made knowingly false statements to Plaintiffs about the handling of the order, falsely stating that law enforcement would serve the documents and that confidentiality would be maintained, suggesting institutionalized disregard for mandated procedures.

163.    Ada County's failure to train, supervise, or discipline employees in the handling of

**COMPLAINT AND DEMAND FOR JURY TRIAL - 32**

confidential court orders—despite the known risk of harm in domestic violence cases—reflects deliberate indifference to Plaintiffs' constitutional rights, including:

    a.   The right to informational privacy under the Fourteenth Amendment;

    b.   The right to access court protection without exposing themselves to further danger;

    c.   The right to procedural due process in the enforcement of judicial orders.

164.    As a direct and proximate result of Ada County's unconstitutional policies, customs, and deliberate indifference, Plaintiffs suffered substantial harm, including psychological trauma, the loss of their confidential location, the need to relocate a second time, and the ongoing threat to their safety.

165.    Ada County is liable under Monell v. Dept. of Social Services, 436 U.S. 658 (1978), and 42 U.S.C. § 1983. Plaintiffs seek compensatory damages, punitive damages (as permitted), attorney's fees pursuant to 42 U.S.C. § 1988, and all other relief deemed just and proper by this Court.

**COUNT VI**
**Fraud and Constructive Fraud**

166.    Plaintiffs reallege all prior paragraphs as though fully set forth herein.

167.    Between February 4 and February 20, 2025, agents and employees of Ada County, including the Domestic Violence Coordinator, made repeated representations to Plaintiffs concerning the processing, redaction, and service of a sealed protection order.

168.    These representations included express statements that:

    a.   The order would be transmitted to Tennessee law enforcement for personal service;

    b.   The address information in the order had been redacted or concealed;

    c.   Ada County had no discretion in the method of service;

    d.   Service was handled "by the sheriff," when in fact it was not.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 33**

169.   Each of these statements was false. Ada County never transmitted the order to the sheriff, the order was never redacted, and Ada County had—and exercised—discretion in the method of service without judicial oversight.

170.   At the time these statements were made, Ada County knew or should have known they were false. Ada County personnel had access to the documents, were involved in the selection of the process server, and were fully aware that the sealed address had not been redacted.

171.   These falsehoods were not innocent misstatements. They were made to conceal Ada County's deviation from required policy, to delay Plaintiffs' discovery of the breach, and to avoid accountability for the resulting harm.

172.   Plaintiffs reasonably relied on Ada County's representations in delaying protective action, continuing to reside at the disclosed address, and attempting to resolve the matter through formal complaint procedures rather than emergency relocation.

173.   This reliance caused substantial harm, including continued exposure of their confidential location, psychological distress, and increased costs associated with preparing for relocation.

174.   To the extent that actual intent to deceive is not provable at this time, Ada County's conduct constitutes constructive fraud. As a party in a position of trust and statutory authority, Ada County owed a duty to be forthright and accurate when communicating with a protected party in a domestic violence matter.

175.   By misrepresenting critical facts and withholding information, Ada County breached that duty and caused foreseeable harm.

## COUNT VII
### Violation of Idaho Public Records Act / Protection Order Statutes

176.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this

**COMPLAINT AND DEMAND FOR JURY TRIAL - 34**

Complaint as though fully set forth herein.

177.   Ada County is a "public agency" as defined in Idaho Code § 74-101(11), and is therefore subject to the Idaho Public Records Act ("IPRA"), Idaho Code § 74-101 et seq.

178.   Under the IPRA, every person has a right to examine and copy public records of a public agency, including but not limited to internal emails, memoranda, correspondence, logs, and communications that are not exempt under specific statutory exclusions. See Idaho Code §§ 74-102, 74-103.

179.   On or about July 16, 2025, Plaintiffs, through counsel, submitted a detailed written request under the Idaho Public Records Act to Ada County seeking all records related to the disclosure of their protected address information in connection with the service of a protective order, including:

  a.  Any emails, internal correspondence, or records referencing Plaintiffs or the protective order case;

  b.  Communications between Clerk's Office personnel and the Ada County Sheriff's Office;

  c.  Communications involving Sandra Barrios, Judge Annie McDevitt, the Clerk of the Court, and any other agents of Ada County involved in processing, discussing, or disclosing the protective order or its return of service.

180.   On or about July 24, 2025, Ada County produced only a limited subset of the requested records, consisting primarily of copies of the publicly filed protective order itself and the Affidavit of Service.

181.   The production did not include any internal communications, emails, logs, or other documents that—upon information and belief—do exist and are not exempt under the statute.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 35**

These include emails between the Clerk's Office and the Sheriff's Office, and communications reflecting the decision-making process that led to the disclosure of protected information to a private third-party.

182.    Plaintiffs are informed and believe, and thereupon allege, that such records exist and were either unlawfully withheld, improperly excluded under claimed exemptions without a required privilege log or explanation, or improperly destroyed.

183.    In addition, Ada County violated Idaho Code §§ 39-6310 and 9-340C by disclosing address information of protected parties that was explicitly ordered sealed and protected by the Court.

184.    These statutes prohibit the disclosure of information contained in protection orders and sealed court files, including the physical addresses of petitioners, except under strictly defined and judicially authorized circumstances.

185.    The unauthorized release of this protected information to a third party—namely, a private process server—was not only a violation of the protective order statutes but also constitutes a violation of the Idaho Public Records Act, which prohibits the disclosure of exempt and sealed records.

186.    Plaintiffs' public records request, submitted under I.C. § 74-102 on or about March 5, 2025, sought all communications, internal memoranda, and documentation related to the issuance, handling, and service of the protective order at issue.

187.    In response, Ada County produced only a partial set of materials, excluding all internal emails, drafts, and internal logs related to the transmission of the order. This incomplete response violated Ada County's statutory obligation under I.C. § 74-103(1) to produce all public records not expressly exempt.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 36**

188.    Additionally, the disclosure of the sealed address to the restrained party constituted a violation of I.C. § 39-6310 and I.C. § 74-106(2), which prohibit release of protected court records and domestic violence-related identifying information.

189.    Plaintiffs request statutory damages, attorney fees under I.C. § 74-115, and an order compelling the full production of responsive records.

190.    Plaintiffs have suffered and continue to suffer harm as a result of Ada County's unlawful conduct, including the forced abandonment of their residence, relocation costs, emotional trauma, and fear for their safety.

191.    Under Idaho Code § 74-115, Plaintiffs are entitled to actual damages, attorney's fees, and all other relief deemed appropriate by the Court.

### COUNT VIII
**Violation of Constitutional Rights – Individual-Capacity Claim Against Dharyan Cox**
**(42 U.S.C. § 1983 – Fourteenth Amendment; Ministerial Violation)**

192.    Plaintiffs reallege and incorporate all prior paragraphs as though fully set forth herein.

193.    At all relevant times, Dharyan Cox was an employee of the Ada County Clerk's Office acting under color of state law in her official capacity as a court clerk responsible for processing protective orders and coordinating service of process.

194.    Cox owed Plaintiffs a ministerial, non-discretionary duty to follow Idaho statutory law and internal court protocols governing sealed protection orders, including:

   a.    Ensuring that sealed information was not disclosed to unauthorized parties;

   b.    Routing out-of-state service through appropriate law enforcement channels;

   c.    Complying with Idaho Code §§ 39-6311 and 39-6306;

   d.    Obtaining judicial approval before deviating from standard procedures.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 37**

195.    On or about February 8, 2025, Cox knowingly and without judicial authorization transmitted a sealed, unredacted copy of the Plaintiffs' protection order—including confidential address and personal data—to a private process server for direct service.

196.    The process server served the confidential documents to the restrained party or on her husband, Brandon Russell, a non-party to the order and an individual with a known close relationship to the respondent.

197.    This act was not discretionary. It violated a clear legal and administrative directive. The Court's sealing order did not authorize disclosure to anyone other than law enforcement. Cox's decision was contrary to established law and cannot be shielded by discretionary function immunity.

198.    Cox's conduct demonstrated deliberate indifference to Plaintiffs' constitutional rights and the foreseeable consequences of disclosing their sealed address.

199.    As a direct and proximate result, Plaintiffs suffered severe harm, including fear for physical safety, disruption of their child's education, the need for emergency relocation, psychological trauma, and loss of trust in the judicial system.

200.    No reasonable official in Cox's position could have believed that serving unredacted, sealed documents to a third party, especially someone not named in the order, was lawful or constitutional.

## COUNT IX
### Violation of Constitutional Rights – Individual-Capacity Claim Against Michael Paananen (42 U.S.C. § 1983 – Fourteenth Amendment; Ministerial Violation)

201.    Plaintiffs reallege and incorporate all prior paragraphs as though fully set forth herein.

202.    At all relevant times, Michael Paananen was an employee of the Ada County

Clerk's Office acting under color of state law in his official capacity as the Associate Direct of the Court Clerk's Office responsible for overseeing the processing of protective orders and coordinating service of process.

203.    Paananen owed Plaintiffs a ministerial, non-discretionary duty to follow Idaho statutory law and internal court protocols governing sealed protection orders, including:

    a.  Ensuring that sealed information was not disclosed to unauthorized parties;

    b.  Routing out-of-state service through appropriate law enforcement channels;

    c.  Complying with Idaho Code §§ 39-6311 and 39-6306;

    d.  Obtaining judicial approval before deviating from standard procedures.

204.    On or about February 8, 2025, Paananen permitted the knowing and without judicial authorization transmittal of a sealed, unredacted copy of the Plaintiffs' protection order—including confidential address and personal data—to a private process server for direct service.

205.    The process server served the confidential sealed documents on the restrained party, or on her husband, Brandon Russell, a non-party to the order and an individual with a known close relationship to the respondent.

206.    This act was not discretionary. It violated a clear legal and administrative directive. The Court's sealing order did not authorize disclosure to anyone other than law enforcement. Paananen's decision was contrary to established law and cannot be shielded by discretionary function immunity.

207.    Paananen's conduct demonstrated deliberate indifference to Plaintiffs' constitutional rights and the foreseeable consequences of disclosing their sealed address.

208.    As a direct and proximate result, Plaintiffs suffered severe harm, including fear for physical safety, disruption of their child's education, the need for emergency relocation,

**COMPLAINT AND DEMAND FOR JURY TRIAL - 39**

psychological trauma, and loss of trust in the judicial system.

209.    No reasonable official in Paananen's position could have believed that serving unredacted, sealed documents to the restrained party, or a closely related third party, was lawful or constitutional.

## COUNT X
### Fraud – Individual-Capacity Claim Against Michael Paananen

210.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

211.    At all relevant times, Defendant Michael Paananen was the Associate Director of the Ada County Clerk's Office and acted under color of state law in the handling, supervision, communication, and oversight of protective order service procedures.

212.    Beginning on or about February 14, 2025, and continuing over the course of multiple recorded telephone calls and communications, Paananen made a series of material representations to Plaintiffs concerning the method of service, the confidentiality protections, and the handling of Plaintiffs' sealed protection order.

213.    These representations included, but were not limited to, statements that:

   a.  Ada County had transmitted the protection order "only to the Sheriff's Office in Tennessee";

   b.  "there is no accidental way" the sealed confidential information could have been served on the restrained party;

   c.  Ada County had not provided the sealed order to a private process server;

   d.  The error, if any, originated with the Tennessee Sheriff's Office; and

   e.  Paananen "had the email to the Tennessee Sheriff's Office in his hands," when he did not.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 40**

214.     Each of these statements was false at the time it was made. Ada County had, in fact, already transmitted the unredacted, sealed order to ABC Legal, a private process server, who served it on the restrained party or her husband.

215.     At the time he made these statements, Paananen knew the representations were false, or acted with reckless disregard for the truth, including by asserting the existence of service communications that did not exist and blaming law enforcement agencies that had never been contacted.

216.     Paananen's statements were made intentionally to mislead Plaintiffs regarding the nature and extent of the disclosure, to conceal Ada County's procedural violations, and to prevent Plaintiffs from immediately escalating the matter, seeking emergency judicial intervention, or taking urgent protective measures.

217.     Plaintiffs reasonably and actually relied on these false statements. In particular, they delayed seeking emergency reissuance of the protection order, remained in their Idaho residence, and refrained from adopting immediate safety measures they otherwise would have taken had they known the sealed order had been served on the restrained party's household.

218.     Plaintiffs' reliance was reasonable, as Paananen held himself out as the Associate Director of the Clerk's Office with direct authority and responsibility over protective order processing and service procedures, and Plaintiffs had no independent means of determining the true facts until they obtained confirmation from the Lewis County Sheriff's Office.

219.     As a direct and proximate result of Paananen's fraudulent misrepresentations, Plaintiffs suffered:

   a.   Heightened emotional distress, panic, and psychological trauma;

   b.   Exposure of their confidential location for a longer period, increasing the danger

COMPLAINT AND DEMAND FOR JURY TRIAL - 41

posed by the restrained party;

c.  Disruption to their child's schooling, mental health, and stability;

d.  Costs associated with increased security measures and preparation for emergency relocation; and

e.  Loss of trust in the protective order system designed to shield them from the very harm Ada County facilitated.

220.    Paananen's conduct constitutes fraud under Idaho law because it includes (1) a material representation; (2) falsity; (3) knowledge of falsity or reckless disregard; (4) intent to induce reliance; (5) justifiable reliance; and (6) resulting damages.

221.    Because Paananen acted with actual knowledge of falsity, conscious disregard of Plaintiffs' safety, and deliberate concealment of a highly dangerous breach of a sealed order, Plaintiffs are entitled to punitive damages under Idaho Code § 6-1604.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

1.    Award compensatory and punitive damages in an amount to be determined at trial;

2.    Issue declaratory relief stating that Defendants violated Plaintiffs' constitutional and statutory rights;

3.    Award reasonable attorneys' fees under 42 U.S.C. § 1988 and other applicable law;

4.    Award costs of suit;

5.    Grant such other and further relief as the Court deems just and proper.

//

//

//

**COMPLAINT AND DEMAND FOR JURY TRIAL - 42**

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED this 16th day of December, 2025.

TAYLOR LAW OFFICES, PLLC

*/s/ Jason K. Henderson*
Jason K. Henderson
*Attorneys for Plaintiffs*

**COMPLAINT AND DEMAND FOR JURY TRIAL - 43**

# Exhibit A

NO. _____

A.M. __11:56__ FILED P.M. _____

FEB 18 2025

TRENT TRIPPLE, Clerk
By JANELL HENSON
DEPUTY

IN THE DISTRICT COURT OF THE 4th JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| **John Feuerbacher** | Case No.: **CV01-25-01959** |
| Plaintiff/Petitioner | |
| vs. | Hearing Date: **02/12/2025** |
| **Natasha Hemric** | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **LETTER; SWORN PETITION FOR PROTECTION ORDER; PROTECTION ORDER** |

Received by **Glory Oherein**, on the **6th day of February, 2025 at 6:00 AM** to be served upon **Natasha Hemric** at **91 Ray St, Hohenwald, Lewis County, TN 38462**.
On the **8th day of February, 2025 at 5:23 PM**, I, Glory Oherein, SERVED **Natasha Hemric** at **91 Ray St, Hohenwald, Lewis County, TN 38462** in the manner indicated below:

**INDIVIDUAL SERVICE**, by personally delivering **1** copy(ies) of the above-listed documents to **Natasha Hemric**.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
I delivered the documents to Natasha Hemric with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a blonde-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 140-160 lbs.

Service Fee Total: **$85.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: ___Glory___            02/09/2025
    Glory Oherein                   Server ID #            Date



REF: **CV01-25-01959**

Page 1 of 1

Tracking #: **0158016230**

# Exhibit B

From: **Noreply@adacounty.id.gov** <noreply@adacounty.id.gov>
Date: Fri, Feb 14, 2025 at 5:03 PM
Subject: New submission from Claim for Damage
To: █████████████████████

# Ada County

## NOTICE OF CLAIM BY CITIZEN TO ADA COUNTY

Your claim must be filed and received by Ada County no later than 180 days from the date of the incident.

**PERSONAL INFORMATION**

Name of Claimant: **Kristiana, John and**
████████████████████

Address: ██████████████████████
City: ████████████   State:   Zip: ████████
**Idaho**
Phone: ████████████   Email: ████████████████████████

**CLAIM INFORMATION**

In compliance with Title 6, Chapter 9, Idaho Code, the undersigned hereby presents a claim against Ada County for damages arising out of an occurrence which happened as follows:
Date: **02/14/2025**                              Time: **01:45 pm**

Location: **Home - notified by phone call**

Cause of Damage (Describe the details and circumstances of the accident or occurrence): **Our confidential information was handed directly to the Respondent, Natasha Hemric's Husband, Brandon Garrett Russel, and ultimately given to Natasha.**

**Our Protection Order was filed on February 4, 2025. It was filed for not only ourselves, John and Kristiana Feuerbacher but for our Son, who is 9. It was filed due to threats, stalking, the leaking of our personal information, and more multiple threats to burn down our house and cause our family physical harm, ruin our business and our lives. We were granted a Temporary Protection Order and have been waiting for the Respondent, Natasha Hemric to be served.**

**The Respondent is located in Tennessee, and Ada County was informed by that Sheriff's Office that the Protection Order needed to be mailed to Lewis County, TN. We were told the documents were mailed on February 4. John contacted Lewis County daily to confirm if they had received the paperwork. They had not. Our following hearing was February 12, before our court appointment, John was given a fax number and email from the Lewis County Sheriff's Office, which he forwarded to the clerks at the courthouse. Our case was continued that day due to the Respondent not being served in Tennessee.**

**On February 14 at 10:30 AM, John called Lewis County again and was informed that the paperwork had been served to the Respondent's address at 91 Ray St. They attempted to serve the Protection Order, and a male answered, claiming Natasha no longer lived there. Lewis County was unclear about the details of this encounter and urged John to talk to Ada County, in specific Dharyan, to whom we had never spoken with.**

**John then called and spoke with Dharyan at the Ada County Courthouse, who told him the documents were left at the 91 Ray St address with an unknown male. This male, who was not Natasha Hemric, said Natasha no longer lived there and was in Murfreesboro, TN. Dharyan spoke with him over the phone, and he claimed he would return the documents to Ada County. We were unaware at the time that the documents left with this male were the confidential documents. We mentioned to Dharyan that this could be Natasha's Husband but Dharyan was not sure.**

**At 1:45 PM, John received a phone call from Deputy Vinny Supdera of Ada County, who informed us that it was our confidential documents had been handed to the unknown male at 91 Ray St.**

At 1:50 PM, John spoke with Hohenwald Police Chief Todd Webb, who stated that his department had not attempted to serve the Protection Order and there was no documentation of any service to that address or name. We tell him that we suspect the male at 91 Ray St is Natasha's husband, Brandon Garrett Russel. We requested that Todd Webb contact Brandon to clarify what had happened and possible get the documents back. Todd agreed to visit Brandon himself and give us a call back.

At 2:45 PM, Todd Webb returned the call and informed us that he had spoken with Brandon. Brandon confirmed that he had received the paperwork on Saturday, February 8, from a Nigerian/Black man with a heavy accent who drove a silver Toyota Camry. Brandon stated that the man simply handed him the documents and left. Brandon admitted to opening the documents, seeing the confidential information, and calling Natasha to inform her and that he shared the document information with Natasha. He confirmed that he called Ada County and spoke with Dharyan and agreed to return the documents to them. Todd Webb clarified again that it was not his department that served the papers to 91 Ray St but a private processor. He also stated that after reviewing all CAD files, he could see his department had not attempted service, and it was his belief that Ada County had hired a private processor to serve the documents. However, Ada County has not yet received these documents.

At 3:00 PM, Mike from the Ada County Courthouse Clerk's Office called us. After investigating, he believed the fault lay with Lewis County. He confirmed they had not hired a private processor but was unsure where the mailed or faxed documents had been sent. He stated that the only documents Lewis County had received were from an email and promised to look into the issue further.

There are no words for how upset we are by this situation. The harm that Ada County and Lewis County have put us in is mind blowing. We feel deeply wronged by both Ada County and Lewis County. We filed this Protection Order due to serious threats of bodily harm from Natasha, as well as her online harassment and attempts to cause harm by posting our personal information. Natasha now has full access to our physical address and personal details, which directly contradicts the purpose of the Protection Order and puts our family at risk.

**John and Kristiana Feuerbacher**

Person(s) involved and or Witnesses of damage and/or injury:

1. Name: **John Feuerbacher**                Phone: ▮▮▮▮▮▮
Address: ▮▮▮▮▮▮
 City: ▮▮▮▮▮▮            State: **Idaho**  Zip: ▮▮▮▮▮▮
2. Name: **Kristiana Feuerbacher**            Phone: ▮▮▮▮▮▮
Address:
 City:                State:              Zip:
3. Name:                            Phone:

Address:

 City:                State:              Zip:

PROPERTY DAMAGE (IF APPLICABLE)

Describe Property (Please provide as much detail as possible):

Describe Property Damage:

Property Damage Amount: $

**PERSONAL INJURY (IF APPLICABLE)**

Describe Personal Injuries:

Date: **02/14/2025**                    Signature: **Kristiana Feuerbacher**